Curtis v. Zutavern.

---

MARY E. CURTIS ET AL. V. GEORGE C. ZUTAVERN ET AL.

FILED JANUARY 21, 1903.  No. 12,443.

Commissioner's opinion, Department No. 1.

1. **Decree of Partition:** JURISDICTION OF PARTIES: COLLATERAL PROCEEDING. A decree of partition, where the court has jurisdiction of all parties, and assigns with proper findings their several shares, is final and conclusive in any collateral proceeding as to the title then held by each of the parties.

2. **Dower:** BOND: DISTRIBUTION. Where one-third of the net proceeds of a partition sale has been delivered to the assignee of the widow's dower for his use during her life, only, and on his bond conditioned for its repayment into court at her death, it will come back into court for distribution in the same proportions as originally decreed for the remainder of the estate unless transfers have intervened.

3. **Assignment of Interest.** Assignment of an interest in such reversion fund may be oral and may be proved by oral testimony.

4. **Quitclaim Deed as Evidence of Assignment.** A quitclaim deed of the land, made after the confirmation of the partition sale to the purchaser at such sale, may or may not be evidence of such an assignment, but would not itself constitute one.

5. **Conveyance Before Partition:** INTENT. A conveyance, before the partition proceedings, by one of the owners of the land to a brother, though purporting to convey all his interest, where by its other terms and the circumstances it is clear that only a transfer of an interest obtained by purchase was intended, and where the decree of partition so finds, will be held to convey the purchased interest only, and not the one inherited.

Syllabus by court; catch-words by editor.

6. **Quitclaim Deed: Reversionary Interest.** The quitclaim deed of an owner, purporting to convey all his interest in land, carries not only his interest in possession, but also any reversionary rights in the same land which he holds subject to a then existing dower estate.

7. **Decree in Partition: Reversion.** Owners of lands who have given such quitclaim deeds and have suffered a decree in partition against them that their grantee holds title to the land so conveyed and have allowed in such action of partition one-third of the net proceeds of the sale to be paid to the purchaser of the dower estate, to be held by him during the life of the doweress, are estopped to assert any claim accruing before the partition proceedings to the reversion of the dower.

8. **Owners of Land: Representatives: Suit on Bond: Dower Fund.** The owners of the land as ascertained in such partition suit, and their representatives, so far as they are deceased, may join as plaintiffs in a suit on the bond given in those proceedings for the repayment of the dower fund.

Error from the district court for Johnson county. Action on bond. Tried below before Stull, J. *Reversed.*

*M. B. C. True,* for plaintiffs in error.

*Samuel P. Davidson, contra.*

Hastings, C.

An examination of the record in this case, discloses no important dispute as to facts. The defendants' brief makes no objection to any statements of fact in that of plaintiffs. The reply brief only objects to the defendants' propositions of law. The legal questions arising seem to relate wholly to the intention and effect of certain admitted conveyances and the effect of a partition decree and of a bond given for the payment into court on the death of the widow of a certain sum, whose income was set apart as her dower. The action was begun, evidently, upon the theory that this sum of money, whose interest the widow's grantee had enjoyed during her lifetime, was intended at her death to be distributed among the heirs of her husband, and that they were entitled to it all by right of descent. That theory the

district court refused to entertain and rendered judgment only in favor of certain heirs whose conveyances were not of record and whose interests were not claimed by defendants.

The real question between the plaintiffs and defendants is whether or not, under the circumstances, and in view of the partition proceedings, and the giving of this bond, the heirs of Bluford Cannon, as such, are entitled to receive the amount of it. On September 26, 1871, Bluford Cannon died in Johnson county, leaving eight surviving children and two grandchildren, Jane and Patience Cannon, the latter of whom died leaving two great-grandchildren of the intestate, John and Swift Berry; and Jane Cannon became the Jane Patrick of the petition. Four of these children were minors and at the time of his death had received nothing from his estate. The other five had received advancements to the extent of $1,000 each. The widow and the younger children continued to reside upon the homestead farm of 400 acres in Johnson county. After the father's death the children seem to have regarded the farm as of value sufficient to place the four younger children on an equality with the older ones and leave intact the mother's dower. The mother remarried and became Mrs. Platt. The family seems to have remained in occupation of the farm. In 1878 Benjamin became of age, and deeded his interest in the land to his mother, by what purported to be a warranty deed, and conveyed "all of my undivided one-fourth interest, the same being his entire interest" in the 400 acres of land. In 1881, Katie, having married, herself and husband deeded her interest to her two brothers, Charles Henry and Benjamin; this was also by a deed in the form of a general warranty, and purported to convey "all of an undivided one-fourth interest, the same being their entire interest in and to" the lands. In 1881 Cora and her husband conveyed to the defendant Zutavern, by deed of quitclaim, "all the undivided right, title and interest in and to" these lands. In 1882 the mother conveyed to the defendant Zutavern, by quitclaim deed, "all the undi-

vided one-fourth interest, the same being my entire interest by purchase in and to" this same land. The same year, and four months later, Charles Henry and wife deeded to Benjamin one-half of the undivided one-fourth of the premises described, "the same being the entire interest of said grantors in and to all said premises." Charles Henry, it must be recollected, was one of the five older children. He was evidently asserting an interest only to the extent of an undivided one-half of that which had been conveyed to him jointly with Benjamin by Katie and her husband. A month later Benjamin and his wife deeded to the defendant Zutavern "all of an undivided one-fourth interest, the same being their entire interest in and to the premises described." By this conveyance Benjamin evidently intended to convey the interest he had acquired from Katie and her husband through their joint deed to himself and Charles Henry and then by Charles Henry's deed to him. It will be remembered that he had previously, in 1878, conveyed to his mother the one-fourth interest which he claimed by descent. Charles Henry and Benjamin, while they held Katie's share, apparently mortgaged it, and this conveyance to Zutavern by Benjamin was made subject to taxes and mortgages. On August 8, 1882, the defendant Zutavern brought an action in the district court of Johnson county to partition the land. The family were all made parties. Zutavern alleged his purchase of the shares of Benjamin, Cora and Katie and a purchase of the widow's dower. He alleged that he owned three-ninths of the land, and the grandchildren one-ninth, and the five surviving children of Bluford Cannon each a ninth interest, subject to the dower right. He asked that the shares be decreed as alleged. The court found his interest as well as the others to be as alleged in the petition. The land was sold. Under the decree it was provided that the advancements to the several older children should be considered in the distribution of the proceeds and that the portion of the proceeds due Charles Henry and Benjamin should be applied to the payment of the mortgages so far as needed to satisfy such

mortgages. The land was sold and in the decree of confirmation it was provided that one-third of the net proceeds of the sale, the sum of $2,214.14, should be put out at interest for the benefit of George C. Zutavern during the life of the mother, the interest only to be paid to him as his own property, and that if he should enter into a bond for the repayment of the principal on the death of the mother, the money should be "delivered to him for his own use until that death." Zutavern executed the bond in the following terms:

"Know all men by these presents, that George C. Zutavern, as principal, and Charles McCrosky, Chas. A. Holmes, Alf. Canfield, D. R. Bush, J. S. Harmon, G. M. Buffum, C. H. Halstead, Martin Gabriel, as sureties, are held and firmly bound unto the judge of the district court in and for Johnson county, state of Nebraska, in the penal sum of four thousand dollars for the payment of which we hereby bind ourselves, our heirs, administrators and assigns. The condition of the above obligation is such that, whereas the said George C. Zutavern has been appointed by the district court in and for Johnson county, state of Nebraska, the custodian of the dower interest of Sarah E. Platt, widow of Bluford Cannon, deceased. Now therefore, if the said George C. Zutavern shall, upon death of the said Sarah E. Platt, pay into the district court the sum of two thousand, two hundred and fourteen 14-100 dollars, the same being the full amount of said dower interest of said Sarah E. Platt, then this obligation to be void, else to remain in full force and virtue in law. Witness our hands this 15th day of March, A. D. 1883."

One of the sureties, Charles McCrosky, died before the doweress. Her death took place June 10, 1900. No money was paid into court, and this action was brought, making all of the surviving heirs of Bluford Cannon parties plaintiff, and Zutavern and his sureties and the heirs of the deceased McCrosky defendants. There were two answers filed,—one of Zutavern and the other by the sureties, including the McCrosky heirs. The answers are substantially

the same except, of course, that one admits executing the bond as principal, the others as sureties. The defenses are: (1) Insufficiency of the petition to state a cause of action; (2) invalidity of the bond as not based on any statute or agreement, and that it is made payable to the judge of the district court and not to the plaintiffs; (3) denial of all allegations except as admitted. The answers then admit the death of Bluford Cannon; his ownership of the land; the relationship of the parties; set up the conveyances which have been described; allege that on March 3, 1882, the mother sold and conveyed to Zutavern, as guardian of Smith J. Cannon, his entire interest in the land, and received from Zutavern the full agreed price of it, and reported the same to the county court, and afterwards, on coming of age, he received the entire proceeds of the sale and has ever since, and for more than ten years, retained them; and allege that in 1884, after the partition proceedings, Patience Curtis and her husband sold their entire interest in the lands and all interest that should thereafter accrue to them, meaning and intending to convey all the interest they had in the reversion of the mother's dower. The answers claim that by means of these conveyances and of those which had preceded the partition, Zutavern became the absolute owner of the entire amount of the reversion except the one-ninth interest of Mary E. Curtis and the one-ninth interest of the three grandchildren and great-grandchildren, Jane Patrick and John and Swift Berry. The answers also allege a tender of $1,023.35 on January 4, 1901, and allege that it had been kept good, but say that no more than $492 were due. The reply admits that the bond was based upon the order in the partition suit and admits the tender and denies generally. The district court found due Mary E. Curtis $246.01, being one-ninth of the dower money, and that she was entitled to interest from January 4, 1901. The court found that Jane Patrick and John and Swift Berry were jointly entitled to one-ninth, and that prior to the commencement of the suit Zutavern had paid to each of the other plaintiffs their entire interest.

Judgment was rendered in favor of these parties and against the remaining plaintiffs, and the action dismissed as to all the others. Plaintiffs except, and all join in the motion for new trial. It may be remarked that before replying the plaintiffs demurred to each of the answers. Motion for new trial was filed, urging objections to all of the proof of the conveyances; alleging error in overruling the demurrer to the answers; error in finding that Zutavern had purchased the interests of each of the several plaintiffs Charles Henry, Benjamin and Smith Cannon, and of Cora Jones and Katie Jones and of Patience Curtis; that such finding, and as to each of said parties, was not sustained by the evidence; and that the court erred in admitting evidence of Zutavern as to conversations with Mrs. Platt, and erred in finding less than the amount of the tender pleaded. The motion for new trial was overruled and plaintiffs bring error to this court under thirty-three assignments.

Plaintiffs' brief urges that the demurrers to each of the answers should have been sustained; that they set out no defense to the bond. Complaint as to the admission of evidence to show Zutavern's purchase of Smith Cannon's interest from the mother is made. It is alleged that there was error in taking oral testimony as to the estate intended to be conveyed by the deeds to Zutavern. It is claimed that there is no proof of authority for the sale of Smith Cannon's interest or that he received the proceeds of it; that the deed from Patience Curtis was subsequent to the partition proceedings, and does not purport to convey any interest in this money, and was erroneously received in evidence; that it purports to be only a quitclaim deed of certain land and can have no relation to a sum of money already derived from the sale of the land; that there is no evidence to uphold any finding of the sale of the share of Charles Henry to Zutavern. It is alleged that the trial court was wrong in the effect which it gave to these deeds and that the deeds only purport to convey a present interest in the land and could have had no reference to any

reversion of a fund. It is also urged that the defendants are bound by their tender, and the plea of it in the answer, and the court should have at least decreed the plaintiffs that amount. It is alleged that Charles Henry died intestate subsequent to the partition proceedings and that by reason of his death plaintiffs each have an interest in the dower fund to the extent of their proportion of his share. While the general relations of the parties are admitted, we do not find any express admission on this point, and there is no proof. The district court in its finding that defendant Zutavern was the owner of the reversion of the dower to the extent of seven-ninths seems to have acted upon certain testimony of Zutavern's own, all of which was taken over plaintiffs' objection. He swore that at the time these conveyances were made, he supposed that he was buying the entire reversion of the dower interest; that such was the agreement with the mother as to Smith J.'s share, and he supposed he got the others, all except those of John W. Cannon and Mary E. Curtis. When he purchased any of them, aside from the procuring of the deeds before mentioned, he does not say. He testified, over plaintiffs' objection, that the deed of Mrs. Patience Curtis, the only one which is subsequent to the partition proceedings, was intended to convey her interest in the reversion of the dower. The deed, on its face, is simply a quitclaim deed of all interest in the land. Mrs. Curtis says there was no intention on her part and no understanding that it was a sale of her right in the reversion of the dower. Mrs. Platt, the mother, as stated, is dead. Benjamin C. and Mrs. Katie Jones swear that their intention when the deeds were executed, was to convey merely their then present interest in the land, subject to the dower right, and that their understanding at the time was that this was all which was conveyed. Mrs. Cora Jones apparently does not testify. Mrs. Platt's deed purports to convey only a one-fourth interest in the land, "acquired by purchase." She made apparently a separate assignment of her dower, though we are unable to find it in the record. As a matter of fact, Zutavern

seems to have had no dealings, by way of procuring conveyances or assignments from any of the older children, as to this dower reversion, except the taking of a deed of Mrs. Patience Curtis.

It is clear that when the partition sale was made the amount of money named in this bond was taken out of the price of the land. It is clear that it was taken out in a gross sum. It is clear that whoever was entitled at that time to the value of the reversion of this dower did not receive it. It is clear that Zutavern obtained the possession of this money by the giving of this bond and that it was signed by the sureties with the understanding that it was to be repaid. He and they are alike each estopped from denying the recitals in the bond. Zutavern at that time claimed no interest except the three-ninths and the dower right. This three-ninths interest is that represented by Mrs. Platt's conveyance to him of the interest she had acquired from Benjamin, by Benjamin's conveyance to him of the one-ninth interest he had derived through Charles H. Cannon from Mrs. Katie Jones, and the one-ninth conveyed to Mr. Zutavern by Cora Jones and husband. At that time he only claimed to own the three shares thus obtained from Benjamin Cannon and from Mrs. Cora Jones and from Mrs. Katie Jones through her brothers Benjamin and Charles H. The partition decree must be esteemed conclusive upon Zutavern as to his holding any other right or claim in this land at that time. It was an adjudication, at his own instance, in which all the plaintiffs here and Charles H. Cannon were defendants. The only right that he claims to have acquired since is by the quitclaim deed of 1884 from Mrs. Patience Curtis. If he has any right in the other five-ninths of the reversion, it must come by reason of the understanding that he testifies to have accompanied the deeds that he was getting the entire interest. Zutavern appears to have been at one time for some years a member of the Cannon family in the capacity of a boarder. His claim to the share of Smith J. Cannon rests wholly on his assertion, and that of the justice who took the acknowl-

edgment of Mrs. Platt's deed, that it was made with the understanding that Mrs. Platt was conveying away the interest of her 11-year-old son, Smith J. The conveyance not only makes no mention of any such intention, but it distinctly states that Mrs. Platt is conveying "one-fourth interest, being her interest by purchase" in the lands, and that she is relinquishing her right to dower in them. At that time Smith J. Cannon owned a one-ninth interest in the land. Zutavern's partition proceedings, taken a few months later in the same year, allege that Smith still held such one-ninth interest, and from the proceeds of the sale he seems to have received some money. The money clearly must have been outside of and in addition to any interest in the reversion of the dower, because the dower, as above stated, was taken out in a gross sum of the one-third of the net proceeds of the partition sale. It is impossible to see how oral testimony of Zutavern's, that he had this previous oral understanding with the mother that he was getting Smith's interest in the land, can be permitted to prevail both against the statute of frauds and against the estoppel in the decree of partition and in the acceptance and ratification of it by the giving of the bond here in question. It seems impossible to hold, in the face of this estoppel, that Charles H. Cannon's interest in the reversion of the dower ever passed to Zutavern. The latter did not claim it in his partition suit. The circumstances of the deeds indicate conclusively that all parties understood that Charles H. Cannon, by his deed to Benjamin, merely intended to release to the latter a one-half interest in Katie's share, which had been conveyed to Benjamin and Charles Henry jointly. Zutavern, being plaintiff in the partition proceedings, and Charles Henry a defendant, both must be held bound by the decree that Charles Henry had still at that time a one-ninth interest in this land. If Charles Henry is now dead, without issue, his brothers and sisters and their descendants have inherited his share, and all the plaintiffs, therefore, have an interest in the reversion of this dower, at least to that extent.

It remains to consider whether or not Zutavern and his sureties should be held to be estopped from claiming that he is entitled to any part of the reversion of this dower by the terms of the decree of partition and the recitals of the bond.   We are constrained to think not.   It is true that this money was turned over to him for use only during the life of Mrs. Platt under his express agreement to repay it into court when that life was over.   But it seems clear that it must have been the intention of the court, and of all parties at the time, that when Mrs. Platt was finally dead this money should be paid back, to be divided in accordance with the partition decree.   It is impossible to give to the uncertain declarations of witnesses as to circumstances accompanying the making of the prior deeds and as to the intention with which they were made, the effect to do away with their plain purport.   Neither can such evidence be allowed to do away with the palpable meaning and effect of so public an act as a decree in partition, procured on Zutavern's behalf, by one of the distinguished lawyers of the state, and entered by a distinguished district judge.

It remains still to consider whether or not the quitclaim deed of Mrs. Patience Curtis should be permitted to be shown by Zutavern as an assignment of her reversion in this fund, which Zutavern himself asserts was at the time wholly disconnected by means of the partition proceedings from the land.   The conclusion reached is that the question of this subsequent assignment of the reversionary interest is one which may be determined by parol evidence. The quitclaim deed to the land, under the circumstances under which it was given, would not operate by its terms to effect such assignment.   It seems, however, to have been properly admitted in evidence as one of the circumstances in connection with the negotiations between the parties, which should be considered in determining whether or not Mrs. Patience Curtis, as a matter of fact, did, after the partition, assign her interest in the reversion to this fund.

Defendant raises the question of pleading in his answer that there was no joint right of recovery in this case on

this bond. In our opinion, the beneficiaries of the fund, the heirs of Bluford Cannon, have a joint interest in getting the fund replaced. Each of them is interested to the extent, at least, of his proportion of the share of Charles H. Cannon in the subject-matter of the action and in the recovery of the judgment. The bond itself is an entirety. It was taken for their benefit, in a proceeding in which they all were parties. There are no allegations in the answer which indicate any reason for requiring any appointment of an administrator for Bluford Cannon's estate, and if there are none, it would seem that the heirs are entitled to proceed jointly to recover the amount due them. It would also seem that the obligors on the bond are entitled to show that the principal signer is entitled to the three-ninths of this reversion under the decree of partition, and, if they can establish its assignment, also to the one-ninth originally belonging to Mrs. Patience Curtis.

. With regard to the claim that the interest in the reversion of the dower did not pass to Zutavern under his deeds of quitclaim and of bargain and sale, by which he held the three-ninths interest claimed by him in the partition proceedings, and that, therefore, he is not now entitled to any portion of this fund, it seems impossible that it should be sustained. Section 50, chapter 73, Compiled Statutes,* provides: "Every conveyance of real estate shall pass all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." The right to this reversion was a vested remainder. "A remainder is 'vested' when there is a person in being who would have an immediate right to the possession upon the ceasing of the intermediate particular estate. It is an estate grantable by any of the conveyances operating by force of the statute of uses." Anderson's Law Dictionary, *sub voce,* citing *Croxall v. Shererd,* 5 Wall. [U. S.], 268, and cases there cited. *Doe v. Considine,* 6 Wall. [U. S.], 458. The citations amply sustain the doctrine. No other intention than that to pass this estate can be gathered from the deeds,

*Cobbey's Annotated Statutes, sec. 10253.

for they expressly provide for the conveyance of "all the grantors' interest"; but it does not seem necessary to consider this question at all.

It having been concluded that Zutavern is estopped by the decree and the bond given under it from claiming more than three-ninths of this land, it follows that the other parties to that action, who were makers of these deeds, are also estopped. It must be held, as to them, conclusive that at the time of the partition proceedings Zutavern held absolutely the dower interest and the three-ninths of the fee title. He therefore must be allowed to have that three-ninths of the reversion of this fund which is derived from the sale of his three-ninths of the land. It is believed, therefore, that the heirs of Bluford Cannon are entitled to recover six-ninths of this fund by their joint action, unless Patience Curtis is found to have assigned to Zutavern her original one-ninth of it; that the one-ninth of it belonging to Charles Henry Cannon in his lifetime, if he is dead without leaving a will, should go to the plaintiffs jointly; and that Benjamin Cannon, Katie Jones and Cora Jones should receive their portion of this one-ninth. As to Patience Curtis, the question of whether or not she has assigned her reversionary interest to Zutavern since the partition proceedings should be determined.

It is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings according to law.

LOBINGIER and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.